UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19-cv-00129-RJC

| PAMELA GRAGG, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) |
| | ) ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 10), and Defendant's Motion for Summary Judgment, (Doc. No. 12). The motions are ripe for adjudication.

I. BACKGROUND

A. Procedural Background

Pamela Gragg ("Plaintiff") seeks judicial review of Andrew M. Saul's ("Defendant" or "Commissioner") denial of her social security claim. Plaintiff filed applications for Disability Insurance under Title II and Supplemental Security Income under Title XVI of the Social Security Act ("SSA") on December 10, 2014. (Doc. Nos. 8 to 8-1: Administrative Record ("Tr.") at 235, 242.) These claims were denied initially on April 9, 2015, (Tr. 127), and upon reconsideration on June 22, 2015, (Tr. 138, 148). Plaintiff timely filed a request for a hearing on July 29, 2015, (Tr. 156), and an administrative hearing was held by an administrative law judge ("ALJ") on December 5, 2017, (Tr. 178). Following this hearing, the ALJ found that Plaintiff was

not disabled under the SSA. (Tr. 9–28.) Plaintiff requested a review of the ALJ's decision, but on February 11, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 1.) Having exhausted her administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of her social security claim in this Court.

B. Factual Background

The question before the ALJ was whether Plaintiff was disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the SSA. (Tr. 12.) To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that her disability began on November 20, 2012 due to physical and mental impairments. (Tr. 67–68, 80–81.)

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 9–23.) In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the

---

[1] Under the SSA, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

2

duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant can perform other work in the national economy despite her limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do").

In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 21–22.) In reaching his decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that she suffered from severe physical and mental impairments,[2] and that her impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. 14–16.) Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"). In pertinent part, the ALJ found that Plaintiff

> has the [RFC] to perform light work . . . except the claimant can occasionally climb ladders and ropes. She needs to avoid concentrated exposure to hazards (machinery); she is limited to simple routine repetitive tasks in a stable work environment at a nonproduction pace with occasional interpersonal interactions; she

---

[2] The ALJ determined that Plaintiff suffered from the following severe impairments: fibromyalgia, irritable bowel syndrome, diabetes mellitus with polyneuropathy, bipolar disorder II, and history of methamphetamine and marijuana use. (Tr. 14.)

> will be off-task 9 percent of an 8-hour workday; her concentration is
> greater than 2 hours in an 8-hour workday.

(Tr. 16.) Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which she had previously been employed. (Tr. 21.) Therefore, the ALJ proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in her RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 21–22.) To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform three jobs that existed in significant numbers in the national economy: "routing clerk,"[3] "router,"[4] and "production assembler."[5] (Tr. 22.) According to the DOT, all of these jobs involve "light work." The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent her from working; consequently, Plaintiff's applications for Title II and Title XVI benefits were denied. (Tr. 22–23.)

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled his lawful duty in his determination that Plaintiff was not disabled under the SSA. See 42 U.S.C. §§ 405(g), 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a

---

[3] DOT 222.687-022.
[4] DOT 222.587-038.
[5] DOT 706.687-010.

4

Case 1:19-cv-00129-RJC   Document 15   Filed 06/16/20   Page 4 of 9

final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again or substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below.

5

Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff contends that remand is warranted for three reasons: (1) the ALJ failed to identify and resolve the apparent conflict between the limitation in Plaintiff's RFC to simple, routine, and repetitive tasks and the VE's testimony that Plaintiff can perform jobs that require a reasoning level of 2; (2) the ALJ failed to provide a logical bridge between the evidence and the ALJ's conclusions regarding Plaintiff's RFC; and (3) the ALJ failed to provide specific reasons for his determination that Plaintiff's subjective complaints of pain and other symptoms were not credible. The Court agrees that remand is appropriate based on the second allegation of error.

Plaintiff specifically challenges the ALJ's determination in his RFC assessment that Plaintiff "is limited to simple routine repetitive tasks in a stable work environment at a nonproduction pace with occasional interpersonal interactions; she will be off-task 9 percent of an 8-hour workday; her concentration is greater than 2 hours in an 8-hour workday." (Tr. 16.) Plaintiff argues that the ALJ failed to explain how the evidence supports his conclusions that Plaintiff "will be off-task 9 percent of an 8-hour workday" and Plaintiff's "concentration is greater than 2 hours in an 8-hour workday." Plaintiff further argues that the ALJ failed to explain how these limitations account for Plaintiff's moderate limitation in concentration, persistence, and pace.

This Court has previously addressed an ALJ's failure to build a logical bridge from the evidence to his conclusion that a claimant will be off-task nine percent of an

6

eight-hour workday. In Kennedy v. Berryhill, the ALJ—in fact, the same ALJ who decided Plaintiff's disability status here—concluded that the claimant's RFC was "limited to simple, routine, repetitive tasks in a stable environment at a nonproduction pace with occasional interpersonal interaction" and the claimant was "expected to be off task nine percent (9%) of an eight-hour workday." No. 3:18-cv-00405-RJC, 2019 U.S. Dist. LEXIS 131049, at *4 (W.D.N.C. Aug. 6, 2019). The claimant argued that the ALJ failed to provide a logical bridge between the evidence and his conclusion that the claimant would be off-task nine percent of an eight-hour workday. Id. at *6. In addressing the claimant's argument, this Court explained that "[t]he RFC assessment requires a 'narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.'" Id. at *6 (omission in original) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)). Because "the ability to perform simple tasks differs from the ability to stay on task," this Court explained that Mascio requires the ALJ to "either adopt a limitation that addresses a claimant's ability to stay on task or explain why such a limitation is unnecessary." Id. at *7. "In other words, each conclusion made in assessing the RFC must be accompanied by a discussion of supporting evidence. Conclusory statements present in the RFC assessment without accompanying explanation are insufficient under Mascio." Id.

In applying these principles, this Court noted that while the ALJ substantiated his determination that the claimant's RFC allowed her to perform simple, routine, repetitive tasks in a stable environment at a nonproduction pace with occasional

7

interaction with other persons, the ALJ failed to identify or explain his conclusion that the claimant would be off-task nine percent of the time. Id. at *8–10. This Court stated that "[i]n the absence of explanation, the Court is left to pontificate on where the ALJ came up with the nine-percent figure and why this limitation adequately accounts for [the claimant]'s limitations. This is the exact type of guesswork that Mascio and its progeny prohibit this Court from doing." Id. at *10. Thus, this Court concluded that remand was warranted "based on the ALJ's failure to construct an 'accurate and logical bridge from the evidence to his conclusion.'" Id. at *11 (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)).

Just as he did in Kennedy, the ALJ concluded in his RFC assessment here that Plaintiff will be off-task nine percent of an eight-hour workday. The ALJ further concluded that Plaintiff's concentration is greater than two hours in an eight-hour workday. And just like the ALJ's decision in Kennedy failed to provide any explanation for his off-task calculation, the same is true of his decision here. Nowhere in the ALJ's decision does he explain how he determined Plaintiff will be off-task nine percent of the time or how he determined Plaintiff's concentration is greater than two hours in an eight-hour workday. The failure to provide such an explanation leads to the same conclusion reached in Kennedy: This case must be remanded. Id. at *12 ("[W]ithout a narrative discussion laying out the connection between the evidence and the conclusion of the nine-percent off-task limitation, the Court is left to guess as to how the ALJ reached this finding. This sort of guessing game is at the crux of what Mascio prohibits; as such, the Court will not speculate as to why nine percent was

8

the magic number and rather, finds remand appropriate.").

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 10), is **GRANTED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 12), is **DENIED**;

3. This matter is **REMANDED** for further proceedings consistent with this Order; and

4. The Clerk of Court is directed to close this case.

Signed: June 16, 2020

Robert J. Conrad, Jr.
United States District Judge